T.C. Summary Opinion 2001-131


UNITED STATES TAX COURT


KHEN THI AND HONG VAN HUYNH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 4388-99S, 1861-00S.        Filed August 30, 2001.


Khen Thi and Hong Van Huynh, pro se.

<u>Michael S. Hensley</u>, for respondent.


COUVILLION, <u>Special Trial Judge</u>:  These consolidated cases were heard pursuant to section 7463 in effect when the petitions were filed.[1]  The decisions to be entered are not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]    Unless otherwise indicated, section references hereafter are to the Internal Revenue Code in effect for the years at issue.

In separate notices of deficiency, respondent determined deficiencies of $1,552 and $1,515 in petitioners' Federal income taxes for 1996 and 1997, respectively.

The sole issue for decision is whether certain payments by insurance companies during the years at issue of indebtedness owing by petitioners on credit cards constitute gross income under section 61(a).[2]

Some of the facts were stipulated. Those facts and the accompanying exhibits are so found and are incorporated herein by reference. Petitioners' legal residence at the time the petitions were filed was San Diego, California.

During the years at issue, petitioners had several credit cards that had been issued by various banks. Petitioners availed themselves of the opportunity to purchase credit card insurance that provided for the payment of portions of indebtedness owing on the credit cards in the event of death, disability, or unemployment. All indebtedness on the credit cards provided for the accrual of interest in the event amounts due on each card were not paid timely. In addition, the premiums for the credit card insurance were charged to each credit card.

_____

[2] Other adjustments were made to petitioners' Schedules A, Itemized Deductions, some of which are computational and will be resolved by the Court's holding on the matter at issue. All other adjustments that are not computational were conceded by petitioners.

In May 1996, Khen Thi Huynh (petitioner) became unemployed. He remained unemployed for the remainder of 1996 and throughout 1997. Because of petitioner's unemployment, petitioners satisfied one of the contingencies provided by the credit card insurance policies they carried. Accordingly, payments were made during 1996 and 1997 by the insurance companies to the various banks that had issued the credit cards in partial payment of amounts due by petitioners on their credit cards. As of the end of 1996, petitioners owed a total of $91,333.25 on their credit cards. The record does not reflect the total amount owed as of the end of 1997; however, that amount appears to have been substantial. During 1997, the interest accruing on and charged to petitioners' credit cards totaled $12,949.27. In addition, during 1997, the credit card insurance premiums, all charged to the credit cards, totaled $3,714.46.

Pursuant to the terms of the credit card insurance contracts, the various insurance companies paid $9,719 during 1996 and $9,631 during 1997 to the various banks in partial payment of petitioners' credit card debts. Petitioners did not include these amounts as income on their Federal income tax returns for 1996 and 1997. In the notices of deficiency, respondent determined that these amounts constituted gross income.

Petitioners have raised a variety of arguments that the payments by the insurance companies do not constitute gross income. They contend that the factual situation here is analogous to the situation where an insured automobile is damaged in an accident. The insurance company insuring the vehicle pays the body shop for the cost of the repairs, and, in such a situation, the payments do not constitute gross income to the vehicle owner. Moreover, petitioners argue, the payments at issue were not unemployment benefits, and, additionally, since the insurance payments approximately equaled the interest due on the credit card liabilities and portions of the insurance premiums, petitioners realized no economic benefits from the insurance payments because the debts on each credit card remained unpaid, and for which they remained liable. Finally, petitioners argue that they were not the beneficiaries on the insurance contracts, and the banks were the beneficiaries. Because petitioners were not beneficiaries under the terms of the insurance contracts, petitioners contend the amounts paid by the insurance companies were not a benefit to them.

Section 61 provides that gross income includes "all income from whatever source derived," unless otherwise provided. The Supreme Court has consistently given this definition of gross income a liberal construction "in recognition of the intention of Congress to tax all gains except those specifically exempted."

Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955); see also Roemer v. Commissioner, 716 F.2d 693, 696 (9th Cir. 1983), revg. 79 T.C. 398 (1982) (all realized accessions to wealth are presumed taxable income, unless the taxpayer can demonstrate that an acquisition is specifically exempted from taxation). Moreover, section 61(a)(12) provides that gross income includes income from discharge of indebtedness.

The record reflects that petitioners made substantial purchases on their credit cards during 1996 and 1997. Petitioners received goods or services for these purchases and, therefore, realized economic benefits from such purchases. Moreover, these purchases were paid for through the credit made available to petitioners from the credit cards. These credit card purchases, therefore, provided petitioners with a source of money or capital in order to make those purchases. The interest charged on each credit card represented the charge to petitioners for the use of that money or capital. The available credit, therefore, was an economic benefit petitioners received. Finally, the insurance premiums charged to the credit cards provided additional economic benefits to petitioners if certain conditions occurred, such as death, disability, or unemployment. The unemployment condition did occur, and petitioners as a result realized economic benefits by the amount of the payments the insurance companies paid on petitioners' credit card liabilities

during 1996 and 1997.  Finally, as a result of the payments by the insurance companies, petitioners were relieved of the obligation of paying $9,719 and $9,631 to the issuers of their various credit cards.  In Amos v. Commissioner, 47 T.C. 65, 70 (1966), this Court stated:

> Although petitioner did not receive the amount directly from John Hancock Mutual Life Insurance Co., it is well settled that income is not limited to direct receipt of cash, Crane v. Commissioner, 331 U.S. 1 (1947); and that the payment of a legal obligation of a taxpayer is income to him even though such income is not actually received by him, Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 (1929); and Schaeffer v. Commissioner, 258 F.2d 861, 864 (C.A. 6, 1958), certiorari denied 360 U.S. 917. * * *

The Court, therefore, rejects petitioners' arguments.  All of the charges on petitioners' credit cards represented economic benefits petitioners received.  Petitioners were relieved of their liabilities to the extent of the amounts paid by the insurance companies during 1996 and 1997.  Respondent, therefore, is sustained.[3]  Petitioners incorrectly contend that the insurance payments on their credit cards are analogous to insurance recovery amounts for damaged property (such as

---

[3]  At trial, counsel for respondent agreed that the income amounts could be reduced or offset by the premiums charged to petitioners for the insurance coverage for the benefits payable arising from petitioners' unemployment.  Petitioners failed to establish the total amount of the premiums for the 2 years at issue or the portion of such premiums allocable to the unemployment risk (as distinguished from the premiums attributable to death and disability).

automobiles) where, in the latter instance, the insurance benefits do not constitute gross income. That argument is inappropriate to the facts of this case. The general rule is that the taxability of recovery payments depends upon the nature of the claim. If the recovery represents damages for lost profits, the payment is considered income; however, if the recovery represents a replacement of capital destroyed or damaged, the recovery does not constitute taxable income to the extent the recovery does not exceed the basis of the damaged or destroyed property. In the latter event, the recovery is a restoration or return of capital. State Fish Corp. v. Commissioner, 48 T.C. 465, 473 (1967). In this case, petitioners had no basis in their credit card liabilities. Therefore, the payments by the insurance companies were not a recovery or restoration of capital. These payments were income.

Reviewed and adopted as the report of the Small Tax Case Division.

Decisions will be entered for respondent.