In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 17-3358

FRANCES L. ROGERS,

*Petitioner-Appellant,*

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

_____

Appeal from the United States Tax Court.
No. 15306-15 — **Kathleen Kerrigan**, *Judge.*

_____

ARGUED OCTOBER 29, 2018 — DECIDED NOVEMBER 19, 2018

_____

Before BAUER, EASTERBROOK, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* A married couple's choice to file a joint federal income tax return results in both individuals assuming full liability for any owed tax. Frances Rogers and her husband John did so for 2004. When the Internal Revenue Service subsequently found the return deficient, the Rogerses pushed back, ultimately took the IRS to trial, and lost. Frances Rogers, a former teacher with an MBA, doctorate, and law degree, attended the trial. Three years later, and facing a substantial tax deficiency and related penalties, Mrs. Rogers

sought so-called innocent spouse relief under the Internal Revenue Code. The Tax Court rejected the claim, finding that Mrs. Rogers's meaningful participation in the trial precluded her from after-the-fact seeking to avoid responsibility for those liabilities.

The IRS brought its concerns with the 2004 tax return to the Rogerses' attention through the issuance of a notice of deficiency in December 2009. The notice informed them that they owed an additional $488,177 in income taxes and underreporting penalties of $138,732. Mrs. Rogers and her husband responded by challenging the Service's position in Tax Court.

In 2012 a trial ensued to resolve the disputed tax liability. John Rogers, a Harvard-educated tax lawyer, represented himself and his wife at trial. For her part, and although not testifying at trial or otherwise presenting oral argument, Frances Rogers attended the entire trial and sat at the table reserved for taxpayer petitioners.

In July 2014 the Tax Court ruled in the IRS's favor and ordered the Rogerses to pay an income tax deficiency of $207,942 and related penalties of $77,868. Congress has made that liability joint and several. See 26 U.S.C. § 6013(d). On appeal we affirmed the Tax Court's decision. See *Rogers v. Comm'r*, No. 15-3678, slip op. (7th Cir. Nov. 3, 2016). At no point during the proceedings in the Tax Court did Mrs. Rogers (or her husband as her counsel) raise an innocent spouse claim under 26 U.S.C. § 6015.

In June 2015—three years after the trial that ended with the adverse ruling—Mrs. Rogers petitioned the Tax Court for innocent spouse relief under 26 U.S.C. § 6015(b) and (f). But

Congress has chosen to permit such relief only if the petitioner has not "participated meaningfully in [the] prior proceeding"—here the 2012 trial. *Id*. at § 6015(g)(2). In this way, Congress has implemented a variation of *res judicata* applicable to claims for innocent spouse relief pursued after a prior proceeding has reached finality and resolved a taxpayer's liability.

While the Internal Revenue Code does not delineate what constitutes meaningful participation for purposes of innocent spouse relief, courts evaluate the totality of circumstances to measure the extent of a taxpayer's involvement and engagement in the prior proceeding. See *Haag v. Shulman*, 683 F.3d 26, 31 (1st Cir. 2012). Whether Mrs. Rogers meaningfully participated in the 2012 trial is a question of fact, which we review for clear error. See *Freda v. Comm'r*, 656 F.3d 570, 573 (7th Cir. 2011).

The Tax Court held that Mrs. Rogers failed to carry her burden of demonstrating she qualified for innocent spouse relief. The bottom line for the Tax Court was that Mrs. Rogers's contention that she lacked knowledge of business and financial matters, including complex tax matters, and otherwise did not understand what transpired during the 2012 trial lacked credibility. Section 6015(g)(2), the Tax Court reasoned, does not afford innocent spouse relief to individuals who feign ignorance or choose to remain willfully blind to their own tax predicament. Nor, the Tax Court underscored, did Congress intend to afford such relief to someone like Mrs. Rogers who had every opportunity to raise her claim during the 2012 trial.

On appeal Mrs. Rogers contends that a disclosure violation by the IRS should have precluded the Tax Court from

considering the Commissioner's argument that she was barred from seeking innocent spouse relief. As Mrs. Rogers would have it, the IRS was bound under provisions in its Internal Revenue Manual to notify her before the 2012 trial of her right to request innocent spouse relief. That it failed to do so, she contends, means that the Tax Court should not have permitted the Service to invoke the meaningful participation bar in § 6015(g)(2).

We cannot agree. Even assuming that Mrs. Rogers could establish that she did not receive a particular disclosure, she has identified no authority that a disclosure shortcoming precluded the Service from taking the position that she was not entitled to innocent spouse relief. See *Matter of Carlson*, 126 F.3d 915, 922 (7th Cir. 1997) (explaining that the "[p]rocedures in the Internal Revenue Manual are intended to aid in the internal administration of the IRS; they do not confer rights on taxpayers"). This argument need not detain us further.

Mrs. Rogers's position on the merits fares no better. In reviewing her petition for innocent spouse relief, the Tax Court found substantial portions of her testimony to defy reality and lack credibility. The Tax Court did not its mince its words on this score:

- "Despite having an M.B.A. and a J.D. and having completed multiple courses in taxation petitioner contends that she has 'no understanding' of items and transactions reported on their joint returns, which were the subject of the 2004 deficiency case."

- "On her Form 8857 and in her testimony petitioner portrays herself as having a near complete lack of knowledge or sophistication with respect to business

and financial matters. For example, she states that before 2009 she 'was not capable of understanding a checking account or credit card statement' and that she still 'is unable to understand basic financial statements.'"

- "Petitioner's testimony about the extent of her ignorance is not credible."

- "We do not find it credible that she was unaware of the legal implications of being a named party in the 2004 deficiency case."

- "If, as she contends, she truly had 'no idea' about the matters being considered, then she could and should have consulted with her attorney to clarify any misunderstanding." Instead, "[s]he chose to do nothing."

The Tax Court stood on solid ground when rejecting Mrs. Rogers's position. See *Frierdich v. Comm'r*, 925 F.2d 180, 185 (7th Cir. 1991) (explaining that the Tax Court is not required to accept a taxpayer's testimony as absolute fact). Credibility matters. This principle applies with particular force where, as here, the taxpayer's testimony is self-serving and at odds with her education and experience.

The Tax Court also found that Mrs. Rogers's participation through her counsel, an experienced tax attorney, in the prior Tax Court proceedings indicated she participated meaningfully. Based on our review of the record, we cannot say any of these findings reflect clear error.

Accordingly, we AFFIRM.